UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SABRA SANZOTTA, ET AL.,

           Plaintiffs,

v.

CITY OF ANN ARBOR, ET AL.,

           Defendants.

_____/

Case No. 16-10007

SENIOR U.S. DISTRICT JUDGE
ARTHUR J. TARNOW

U.S. MAGISTRATE JUDGE
STEPHANIE DAWKINS DAVIS

**ORDER GRANTING FEDERAL DEFENDANTS' MOTION TO DISMISS [22]; GRANTING CITY DEFENDANTS' MOTION TO DISMISS [23]; GRANTING STATE DEFENDANTS' MOTION TO DISMISS [24]; DENYING PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION [7]; DENYING PLAINTIFFS' MOTION TO STAY OR FOR OTHER RELIEF [26]; AND DENYING FEDERAL DEFENDANTS' MOTION TO DISMISS FOR FAILURE TO PROSECUTE [28]**

Plaintiffs include Ann Arbor residents who live near city parks and an advocacy organization to which the individual Plaintiffs belong. Their claims concern a "deer cull," pursuant to which U.S. Department of Agriculture (USDA) sharpshooters have killed deer in Ann Arbor parks, and plan to do so again in future years, pursuant to an agreement between the USDA and the City of Ann Arbor. The Michigan Department of Natural Resources (DNR) issued the City a permit intended to authorize the deer cull. Plaintiffs have sued many officials of the USDA, the State of Michigan, and the City of Ann Arbor, whom the Court will refer to as the Federal Defendants, the State Defendants, and the City Defendants, respectively. All defendants have filed motions to dismiss, to which Plaintiffs have failed to respond.

1 of 22

Plaintiffs have filed a motion to stay proceedings. The Court finds the motions suitable for determination without a hearing in accord with Local Rule 7.1(f)(2).

For the reasons stated below, the defendants' Motions to Dismiss [Dkt. #22, 23, 24] are **GRANTED** and Plaintiffs' complaint is dismissed in its entirety. All other pending motions [7, 26, 28] are **DENIED**.

### FACTUAL BACKGROUND

The Ann Arbor City Council began to contemplate reducing its deer population in or around 2013, allegedly in response to pressure from a group called Washtenaw Citizens for Ecological Balance (WC4EB). In spring 2014, Defendant Kristin Bissell, a wildlife biologist with the DNR, published a report finding Washtenaw County's deer population to be above-target and recommending additional hunting to reduce the population. The City began formally investigating deer management options and eventually invited WC4EB to develop a plan for a deer cull, which WC4EB published in April 2015. On May 7, 2015, the City published Recommendations for Deer Management in Ann Arbor, including the WC4EB plan as an appendix. On August 17, 2015, the City Council adopted resolution R-15-277 to establish the Deer Management Program, providing for a deer cull to begin in January 2016.

On November 5, 2015, the City Council adopted resolution R-15-362 to authorize the city to enter into a Cooperative Service Agreement, for implementation of the deer cull, with the USDA's Animal and Plant Health Inspection Service's

Wildlife Services.  On November 18, 2015, the City and the USDA entered into the contemplated agreement, with an effective date of December 1, 2015.  On December 23, 2015, the Michigan DNR issued a Damage and Nuisance Control Permit to the City "provid[ing] for actions outlined in the 2015 Ann Arbor Deer Management Plan" between January 2 and March 1, 2016.

Plaintiffs initiated this lawsuit on January 4, 2016.  They filed a Motion for Preliminary Injunction [7] and Motion for Temporary Restraining Order [8] on January 8, 2016.  After a hearing held on January 11, 2016, the Court issued an Order [17] denying Plaintiffs' motion for a temporary restraining order.  With the Court's permission, Plaintiffs filed an Amended Complaint [20] on January 20, 2016.  On February 9, 2016, the Federal Defendants filed a Motion to Dismiss [22].  Their motion was followed by the City Defendants' Motion to Dismiss [23] and the State Defendants' Motion to Dismiss [24], both filed on February 10, 2016.     Plaintiffs did not respond to the motions within the deadline set by Local Rules 7.1(c)(1) and 7.1(e)(1)(B).  On March 15, 2016, the Court issued an Order [25] requiring Plaintiffs to respond to the motions to dismiss by April 5, 2016.  The order stated that if Plaintiffs did not comply, the Court would consider "whether their failure to respond to Defendants' motions to dismiss amounts to a failure to prosecute warranting dismissal of the case under Local Rule 41.2 and/or Federal Rule of Civil Procedure 41(b)."  On April 6, 2016, Plaintiffs filed a Motion to Stay or for Other Relief [26].

This motion is not a response to the motions to dismiss.  Plaintiffs have not filed such a response.  The City Defendants filed a Response [27] to Plaintiffs' motion to stay on April 7, 2016.  On April 13, 2016, the Federal Defendants filed a Motion to Dismiss for Failure to Prosecute [28], which also constitutes their response to Plaintiffs' motion to stay.  The State Defendants filed a Notice [29] of their concurrence in these latter two filings on April 19, 2016.

## ANALYSIS

All defendants move to dismiss Plaintiffs' complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  "Where subject matter jurisdiction is challenged pursuant to [Rule] 12(b)(1), the plaintiff has the burden of proving jurisdiction in order to survive the motion."  *Michigan Southern R.R. Co. v. Branch & St. Joseph Counties Rail Users Ass'n, Inc.*, 287 F.3d 568, 573 (6th Cir. 2002) (citing *Moir v. Greater Cleveland Reg'l Transit Auth.*, 895 F.2d 266, 269 (6th Cir. 1990)).  The Court must "construe the complaint in a light most favorable to the plaintiff, accept[ing] as true all of [the] plaintiff's well-pleaded factual allegations."  *Id.* (quoting *Ludwig v. Board of Trustees of Ferris State Univ.*, 123 F.3d 404, 408 (6th Cir. 1997)).

"When evaluating a motion to dismiss under Rule 12(b)(6), the Court must determine whether the complaint alleges sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *In re Darvocet, Darvon, and*

*Propoxyphene Products Liability Litigation*, 756 F.3d 917, 926 (6th Cir. 2014) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)) (internal quotation marks omitted).  "The plausibility standard is met when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (quoting *Iqbal*, 556 U.S. at 678) (internal quotation marks omitted).

Defendants also move to dismiss Plaintiffs' complaint for failure to prosecute, relying on Plaintiffs' failure to respond to Defendants' motions to dismiss.  The Sixth Circuit has ruled that district courts lack discretion to dismiss a plaintiff's complaint for failure to respond to a motion to dismiss.  *Bangura v. Hansen*, 434 F.3d 487, 497 (6th Cir. 2006); *Carver v. Bunch*, 946 F.2d 451, 455 (6th Cir. 1991).  This rule is in tension with the commonsense rule, applied in many district court cases, that a plaintiff may forfeit arguments and claims by failing to respond to a motion to dismiss.  *See Upshaw v. Green Tree Servicing LLC*, No. 15-cv-13866, 2015 WL 9269136, at *2 (E.D. Mich. Dec. 21, 2015) (unpublished); *Williams v. Chase Bank*, No. 15–10565, 2015 WL 4600067, at *3–*4 (E.D. Mich. July 29, 2015) (unpublished).  Nevertheless, the Court is bound to conclude that it may not dismiss Plaintiffs' complaint for their failure to respond to Defendants' motion to dismiss unless some additional factors justify a finding of failure to prosecute.  *See Carpenter v. City of Flint*, 723 F.3d 700, 704 (6th Cir. 2013) (citing *Mulbah v. Detroit Bd. of*

*Educ.*, 261 F.3d 586, 589 (6th Cir. 2001)) (identifying four factors the Sixth Circuit considers to determine if a district court's dismissal for failure to prosecute was within its discretion). Defendants have not argued that such factors are present. Accordingly, the Court will not dismiss Plaintiffs' complaint for failure to prosecute.

Plaintiffs move to stay this case pending resolution of a related complaint they have filed in the Michigan Court of Claims. They do not argue that the Court is compelled to stay the case, but instead ask the Court to stay proceedings in its discretion. The Court declines to do so.

As explained below, the Court concludes that Plaintiffs have failed to state any claim for violation of federal law upon which relief can be granted. Because this conclusion mandates dismissal of all of Plaintiffs' federal claims, the Court declines to exercise supplemental jurisdiction over any of Plaintiffs' state law claims, leaving the Court without subject-matter jurisdiction over them. Thus, the Court would dismiss Plaintiffs' complaint in its entirety even if the Federal and State Defendants had not asserted sovereign and Eleventh Amendment immunity. Because the Federal and State Defendants have asserted those immunities as jurisdictional defects, however, the Court must address them before reaching the merits. *See Russell v. Lundergan-Grimes*, 784 F.3d 1037, 1046 (6th Cir. 2015).

The City Defendants challenge the Court's subject-matter jurisdiction not on immunity grounds, but on the grounds that Plaintiffs lack constitutional standing to

bring their claims.  Plaintiffs have standing because they allege that Defendants' conduct is injuring or will injure Plaintiffs' aesthetic and recreational use of Ann Arbor parks.  *See, e.g.*, *Friends of Tims Ford v. Tennessee Valley Authority*, 585 F.3d 955, 969 (6th Cir. 2009) (citing *Friends of the Earth, Inc. v. Laidlaw Envt'l Servs., Inc.*, 528 U.S. 167, 183 (2000)).

## I.   Immunities

The Federal Defendants argue that the Court lacks subject-matter jurisdiction over Plaintiffs' claims against them because the claims are barred by federal sovereign immunity.  Similarly, the State Defendants argue that Plaintiffs' claims against them are barred by the Eleventh Amendment, depriving the Court of subject-matter jurisdiction over those claims.

### A.   Federal Defendants' sovereign immunity

"Without a waiver of sovereign immunity, a court is without subject matter jurisdiction over claims against federal agencies or officials in their official capacities."  *Muniz-Muniz v. U.S. Border Patrol*, 741 F.3d 668, 672 (6th Cir. 2013) (citing *Reed v. Reno*, 146 F.3d 392, 397–98 (6th Cir. 1998)).  Plaintiffs sue the individual Federal Defendants only in their official capacities.  Thus, absent a waiver of sovereign immunity, the Court lacks subject-matter jurisdiction over Plaintiffs' claims against the Federal Defendants.

Plaintiffs have identified an applicable waiver of sovereign immunity for one of their claims: the Administrative Procedure Act (APA). The APA waives sovereign immunity with respect to "all non-monetary claims against federal agencies and their officers sued in their official capacity." *Muniz-Muniz*, 741 F.3d at 672. The APA provides a private right of action to enforce the National Environmental Policy Act (NEPA). *Friends of Tims Ford*, 585 F.3d at 964. Plaintiffs have brought a NEPA claim for non-monetary relief through the APA. Sovereign immunity does not shield the Federal Defendants from this claim.

Plaintiffs have identified a second waiver of sovereign immunity that appears to apply to one of their claims: the Federal Tort Claims Act (FTCA). The FTCA "was designed primarily to remove the sovereign immunity of the United States from suits in tort." *Levin v. United States*, 133 S. Ct. 1224, 1228 (2013) (quoting *Richards v. United States*, 369 U.S. 1, 6 (1962)). Plaintiffs raise a tort claim against the Federal Defendants: a conspiracy claim under Michigan common law. The Federal Defendants argue that because conspiracy is an intentional tort, they retain sovereign immunity on the conspiracy claim under 28 U.S.C. § 2680(h), often referred to as the FTCA's "intentional tort exception." This name is misleading, however, because "Section 2680(h) does not remove from the FTCA's waiver all intentional torts." *Id.* at 1228 n.1. Instead, the section preserves sovereign immunity against "[a]ny claim arising out of assault, battery, false imprisonment, false arrest,

malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or

interference with contract rights." 28 U.S.C. § 2680(h). The Federal Defendants do

not argue that Plaintiffs' conspiracy claim arises out of any of the enumerated torts.

Nor do they present any other argument concerning the applicability of the FTCA's

waiver to Plaintiffs' conspiracy claim. Accordingly, the Court concludes that they are

not immune to the conspiracy claim.

Plaintiffs have not identified a waiver of sovereign immunity applicable to their

other claims against the Federal Defendants. The general federal question jurisdiction

statute is not a waiver. *Toledo v. Jackson*, 485 F.3d 836, 838 (6th Cir. 2007) (citing

*Reetz v. United States*, 224 F.3d 794, 795 (6th Cir. 2000)). The *Bivens* doctrine is not

a waiver for official-capacity suits. *Ecclesiastical Order of the Ism of Am, Inc. v.*

*Chasin*, 845 F.2d 113, 115–16 (6th Cir. 1988). Nor is 42 U.S.C. § 1985. *Center for*

*Bio-Ethical Reform, Inc. v. City of Springboro*, 477 F.3d 807, 820 (6th Cir. 2007)

(affirming grant of summary judgment to federal officers on all claims against them,

including a claim under § 1985, on sovereign immunity grounds). Further, the federal

government and its officials are generally not subject to suit under 42 U.S.C. § 1983

because they generally do not act under color of state law. *Haines v. Federal Motor*

*Carrier Safety Admin.*, 814 F.3d 417, 429 (6th Cir. 2016) (citing *Conner v. Greef*, 99

F. App'x 577, 580 (6th Cir. 2004); *Strickland on Behalf of Strickland v. Shalala*, 123

F.3d 863, 866 (6th Cir. 1997)). Plaintiffs may have hoped to rely on an exception to

this limitation on § 1983 suits, but they have presented no argument on that point, and have therefore failed to meet their burden of proving jurisdiction. *Michigan Southern*, 287 F.3d at 573.

In sum, sovereign immunity deprives the Court of subject-matter jurisdiction over all of Plaintiffs' claims against the Federal Defendants except their NEPA claim and common law conspiracy claim.

### B. State Defendants' Eleventh Amendment immunity

The Eleventh Amendment "deprives federal courts of subject-matter jurisdiction when a citizen sues his own State unless the State waives its immunity or Congress abrogates that sovereign immunity." *Russell*, 784 F.3d at 1046 (citing *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98–100 (1984)). A suit against a state official in her official capacity is a suit against the state itself. *Id.* (citing *Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985)). Because Plaintiffs sue the individual State Defendants only in their official capacities, their claims against the State Defendants are essentially claims against the State of Michigan. "Michigan has not consented to the filing of civil rights suits against it in federal court." *Harrison v. Michigan*, 722 F.3d 768, 771 (6th Cir. 2013) (citing *Abick v. Michigan*,

803 F.2d 874, 877 (6th Cir. 1986)).  Further, Plaintiffs have not sued the State

Defendants under any federal statute that abrogates Eleventh Amendment immunity.[1]

Under the *Ex Parte Young* doctrine, however, the Eleventh Amendment does

not bar claims against state officials for prospective injunctive relief against violations

of federal law.  *Russell*, 784 F.3d at 1046 (citing *Diaz v. Mich. Dep't of Corr.*, 703

F.3d 956, 964 (6th Cir. 2013)).  The Court has subject-matter jurisdiction over

Plaintiffs' claims against the State Defendants to the extent that Plaintiffs seek

prospective injunctive relief to prevent future deer cull activities that will allegedly

violate federal law.  The Court otherwise lacks subject-matter jurisdiction over

Plaintiffs' claims against the State Defendants.

## II.    Failure to state a claim

As explained in this section, Plaintiffs' federal claims must be dismissed for

failure to state a claim upon which relief can be granted.  Even if the Court has

discretion to exercise supplemental jurisdiction over any of Plaintiffs' state law

claims, the Court declines to do so, and therefore dismisses the state law claims for

lack of subject-matter jurisdiction.  *See, e.g.*, *Gamel v. City of Cincinnati*, 625 F.3d

949, 952 (6th Cir. 2010) ("When all federal claims are dismissed before trial, the

---

[1] Eleventh Amendment immunity "applies to claims under § 1983." *Thomas v. Noder-Love*, 621 F. App'x 825, 831 (6th Cir. 2015) (citing *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 66, 71 (1989); *Moore v. City of Harriman*, 272 F.3d 769, 771 (6th Cir. 2001)).  It applies to claims under 42 U.S.C. § 1985 as well. *Sykes v. United States*, 507 F. App'x 455, 462 (6th Cir. 2012).

balance of considerations usually will point to dismissing the state law claims [over which the court lacks original jurisdiction].") (quoting *Musson Theatrical, Inc. v. Fed. Exp. Corp.*, 89 F.3d 1244, 1254–1255 (6th Cir. 1996)).

### A.  NEPA

Plaintiffs bring a claim, through the APA, for the Federal Defendants' alleged violation of NEPA.  NEPA requires a federal agency in control of a proposed project that may significantly impact the environment to conduct an "environmental assessment," pursuant to which the agency must evaluate "the environmental impacts of the proposed action and alternatives" and determine if further study is necessary. *Kentucky Coal Ass'n, Inc. v. Tennessee Valley Authority*, 804 F.3d 799, 804 (6th Cir. 2015) (citing 40 C.F.R. §§ 1508.9, 1501.4(b)).  If the assessment shows that the proposed actions may have a significant impact on the environment, the agency may not proceed until it has prepared an "environmental impact statement."  *Id.* (citing 40 C.F.R. §§ 1501.4(c), 1502.3).  Otherwise, the agency may issue a "finding of no significant impact" and proceed with the proposed actions.  *Id.* (citing 40 C.F.R. § 1508.13).  "The agency has 'considerable discretion' in determining whether an environmental assessment should lead to an impact statement."  *Id.* (citing *Klein v. U.S. Dep't of Energy*, 753 F.3d 576, 580 (6th Cir. 2014)).  When a plaintiff challenges an agency's decision to forego preparation of an environmental impact statement, a

court reviews the decision under the "arbitrary and capricious" standard. *Id.* (citing *Dep't of Transp. v. Pub. Citizen*, 541 U.S. 752, 763 (2004)).

In their complaint, Plaintiffs allege that the USDA failed to prepare an environmental impact statement with respect to its involvement in the deer cull. They do not allege that the USDA failed to conduct an environmental assessment. Nor do they allege that the USDA conducted an environmental assessment but arbitrarily and capriciously declined to follow the assessment with an environmental impact statement. Thus, Plaintiffs have failed to plead facts raising a reasonable inference that the Federal Defendants failed to evaluate their participation in the deer cull as mandated by NEPA.

Plaintiffs also allege that the USDA violated NEPA by failing to honor, before the filing of their complaint, Plaintiffs' request for "all information regarding the proposed deer destruction in Ann Arbor." These allegations do not state a claim upon which relief can be granted because responses to such requests are governed by the Freedom of Information Act, which provides an adequate remedy independent of the APA. *Southern Appalachian Biodiversity Project v. U.S. Forest Service*, 500 F. Supp. 2d 764, 769-70 (E.D. Tenn. 2007); *see also Haines*, 814 F.3d at 427 (quoting *Bangura*, 434 F.3d at 500) ("[T]o state a claim for relief under the APA, a plaintiff must allege that his or her injury stems from a final agency action for which there is no other adequate remedy in court.").

In sum, Plaintiffs have failed to state a NEPA claim upon which relief can be granted.

## B.   Conspiracy to violate civil rights

Plaintiffs bring claims for conspiracy to violate civil rights, in violation of 42 U.S.C. § 1985, and for neglect to prevent such conspiracy, in violation of 42 U.S.C. § 1986.  A neglect claim under § 1986 "is derivative and conditioned on establishing a § 1985 violation." *Bartell v. Lohiser*, 215 F.3d 550, 560 (6th Cir. 2000) (citing *Browder v. Tipton*, 630 F.2d 1149, 1155 (6th Cir. 1980); *Haverstick Enterprises, Inc. v. Financial Federal Credit, Inc*., 32 F.3d 989, 994 (6th Cir. 1994)). Section 1985, in turn, "only covers conspiracies against: 1) classes who receive heightened protection under the Equal Protection Clause; and 2) 'those individuals who join together as a class for the purpose of asserting certain fundamental rights.'" *Id.* at 559 (quoting *Browder*, 630 F.2d at 1150).  Its "fundamental rights" coverage extends only to claims of discrimination based on "the unique and peculiar fashion in which a class of victims exercises a fundamental right," such as discrimination against those who exercise their fundamental right to free speech by supporting the Democratic Party.  *Browder*, 630 F.3d at 1153–54.

Plaintiffs do not allege that they belong to a class receiving heightened protection under the Equal Protection Clause or exercising a fundamental right in a

unique and peculiar fashion.  They have therefore failed to state a claim under § 1985.
Their derivative claim under § 1986 must therefore fail as well.

### C.    Federal constitutional claims

Plaintiffs bring claims under 42 U.S.C. § 1983 for violations of their federal
constitutional rights.  "To establish a claim under § 1983, a plaintiff must show that he
was deprived of rights guaranteed under the United States Constitution or federal law
by a person acting 'under color of state law.'"  *Haines*, 814 F.3d at 429 (quoting
*Strickland*, 123 F.3d at 866).

### 1.    Substantive due process

Plaintiffs allege, without elaboration, that Defendants' conduct has violated
and/or will violate Plaintiffs' substantive due process rights.  "Substantive due process
is the doctrine that governmental deprivations of life, liberty or property are subject to
limitations regardless of the adequacy of the procedures employed."  *Range v.
Douglas*, 763 F.3d 573, 588 (6th Cir. 2014) (quoting *Pearson v. City of Grand Blanc*,
961 F.2d 1211, 1216 (6th Cir. 1992)) (internal quotation marks and brackets omitted).
At the hearing on Plaintiffs' Motion for Temporary Restraining Order, Plaintiffs'
counsel relied on *Kallstrom v. City of Columbus*, 136 F.3d 1055 (6th Cir. 1998), as
support for Plaintiffs' substantive due process claim.  It therefore appears that
Plaintiffs' substantive due process claim is premised on the "state-created danger"

doctrine.  *See Sheffield v. City of Fort Thomas, Ky.*, 620 F.3d 596, 613 (6th Cir. 2010)

(acknowledging that *Kallstrom* applied this doctrine to find a due process violation).

Under the state-created danger doctrine, "a plaintiff may bring a substantive

due process claim by establishing (1) an affirmative act by the State that either created

or increased the risk that the plaintiff would be exposed to private acts of violence; (2)

a special danger to the plaintiff created by state action, as distinguished from a risk

that affects the public at large; and (3) the requisite state culpability to establish a

substantive due process violation." *Jasinski v. Tyler*, 729 F.3d 531, 538–39 (6th Cir.

2013) (quoting *Schroder v. City of Fort Thomas,* 412 F.3d 724, 728 (6th Cir. 2005)).

Because Plaintiffs allege that Defendants acted after opportunity to deliberate, the

requisite culpability is deliberate indifference. *McQueen v. Beecher Comm. Schs.*,

433 F.3d 460, 469 (6th Cir. 2006).  Even where a government actor "is subjectively

aware of a substantial risk of serious harm," courts are "unlikely to find deliberate

indifference if his action was motivated by a countervailing, legitimate governmental

purpose." *Hunt v. Sycamore Community School Dist. Bd. of Educ*., 542 F.3d 529, 542

(6th Cir. 2008).  "Reining in the deer population of [a city] is clearly a legitimate

government purpose." *Sheffield*, 620 F.3d at 614.

In *Sheffield*, the Sixth Circuit affirmed a district court's grant of summary

judgment to defendants on a state-created danger claim similar to Plaintiffs'.  *See id.*

at 602, 613.  The *Sheffield* plaintiff claimed that the City of Fort Thomas, Kentucky,

and various city officials violated his substantive due process rights by authorizing

private individuals to shoot arrows within city limits, including in the area around

Plaintiff's residence, for the purpose of lowering the city's deer population. *Id.* at

613–14.  The Sixth Circuit held that the district court properly granted the defendants

summary judgment on this claim because the plaintiff claimed no "special

relationship" with the defendants and nothing in the record established a special

danger to the plaintiff, as distinguished from the general Fort Thomas public. *Id.* at

613.

 Plaintiffs have not pled facts supporting a claim under the state-created danger

doctrine.  Plaintiffs do not claim a special relationship and do not allege that the deer

cull creates a special danger to them distinct from the risks to the general Ann Arbor

public.  Merely living closer than the average member of the public to parks in which

shooting will occur does not satisfy the special danger requirement. *See Schroder*,

412 F.3d at 729 (holding that city's failure to lower speed limit for residential street

did not create special danger with respect to child who lived adjacent to the street).

Further, Plaintiffs have pled no facts raising a reasonable inference that Defendants

have acted with deliberate indifference. *See id.* at 729–31 (holding that even if

plaintiffs established that city "did not strike the correct balance in determining the

proper speed limit" for residential street or "shortsightedly did not heed the

complaints of its citizens" before a child was killed by a speeding car in front of his

home, they did not establish deliberate indifference).  Accordingly, Plaintiffs have

failed to state a substantive due process claim on which relief can be granted.

### 2.      Procedural due process

"To establish a procedural due process claim, a plaintiff must show that (1) it

had a life, liberty, or property interest protected by the Due Process Clause; (2) it was

deprived of this protected interest; and (3) the state did not afford it adequate

procedural rights."  *Daily Services, LLC v. Valentino*, 756 F.3d 893, 904 (6th Cir.

2014) (citing *Women's Med. Prof'l Corp. v. Baird*, 438 F.3d 595, 611 (6th Cir.

2006)).  To assess the adequacy of the process used to deprive a plaintiff of a

protected interest, the Court must balance (1) the plaintiffs' private interests; (2) the

risk that the procedures used will cause an erroneous deprivation of the private

interests; (3) the probable value of additional or substitute procedural safeguards, and

(4) the government's interests, including the function involved and the burdens of

different safeguards.  *United Pet Supply, Inc. v. City of Chattanooga, Tenn.*, 768 F.3d

464, 485 (6th Cir. 2014) (citing *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)).

Plaintiffs' complaint includes cursory allegations concerning a violation of

procedural due process, but does not identify the protected interest of which Plaintiffs

have been deprived or any deficiencies in the procedures associated with that

deprivation.  Plaintiffs have therefore failed to state a procedural due process claim on

which relief can be granted.

### 3.    Equal Protection

Plaintiffs allege that Defendants have violated their rights under the Equal

Protection Clause by allowing federal sharpshooters to engage in conduct for which

Plaintiffs would be prosecuted.  A claim of selective enforcement in violation of the

Equal Protection Clause requires proof that the government's distinction between

potential targets for enforcement had no rational basis or was based in some

discriminatory purpose.  *See Boone v. Spurgess*, 385 F.3d 923, 932 (6th Cir. 2004).

Plaintiffs have not alleged that Defendants lacked a rational basis for distinguishing

between Plaintiffs and federal sharpshooters in foregoing prosecution for deer culling

activities, or that Defendants had any discriminatory motive for making this

distinction.  Thus, they have not stated an Equal Protection claim under a selective

enforcement theory.  Nor have they stated a claim under any alternative theory, since

they have not raised more than "conclusory and unadorned assertions" of disparate

treatment that "burdens a fundamental right, targets a suspect class, or has no rational

basis."  *Center for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 379 (6th Cir.

2011) (quoting *Club Italia Soccer & Sports Org., Inc. v. Charter Twp. of Shelby,

Mich.*, 470 F.3d 286, 299 (6th Cir. 2006)).

### 4.    Takings

Plaintiffs claim that Defendants have violated the Fifth Amendment's

prohibition on the taking of private property for public use without just compensation.

"A taking may assume one of two forms: per se, also known as a physical taking, or regulatory." *McCarthy v. City of Cleveland*, 626 F.3d 280, 283–84 (6th Cir. 2010) (citing *Waste Mgmt., Inc. of Tenn. v. Metro. Gov't of Nashville and Davidson County*, 130 F.3d 731, 737 (6th Cir. 1997)). "A physical taking occurs when 'the government physically intrudes upon a plaintiff's property.'" *Id.* (quoting *Waste Mgmt.*, 130 F.3d at 737). A regulatory taking may occur when the government deprives a property owner of at least some economic use of his property. *Id.* (citing *Lucas v. South Carolina Coastal Council*, 505 U.S. 1003, 1017 (1992); *Harris v. City of St. Clairsville*, 330 F. App'x 68, 76 (6th Cir. 2008)).

Plaintiffs have not alleged a physical intrusion on their property or a deprivation of their property's economic use. They have therefore failed to allege a taking. Even if they had alleged a taking, their claim would not be ripe because they have not alleged that they sought just compensation through available state procedure. *Peters v. Fair*, 427 F.3d 1035, 1037–38 (6th Cir. 2005).

### 5.   First Amendment

Plaintiffs make cursory references to violations of their right to free speech, as well as their rights to assemble and petition the government for redress of grievances. The City Defendants state that Plaintiffs' First Amendment theory "is so undeveloped that [the City] Defendants are at a loss as to how to address it." The Court is equally at a loss. It follows that Plaintiffs have not pled facts allowing the Court to draw a

reasonable inference that Defendants are liable for violating their First Amendment rights.

### 6.  Commerce Clause

Plaintiffs claim that the Federal Defendants have violated the Commerce Clause "by making policy and enforcement decisions affecting Plaintiffs outside of interstate commerce."  The Supreme Court has recognized that plaintiffs may bring § 1983 claims to enforce the Commerce Clause's restriction on state regulation of interstate commerce.  *Dennis v. Higgins*, 498 U.S. 439, 446–51 (1991).  Plaintiffs, however, are complaining of *federal* government activity on the grounds that it allegedly has effects *outside of* interstate commerce.  Plaintiffs have identified no authority recognizing a § 1983 cause of action of this nature.  The Court concludes that Plaintiffs' Commerce Clause allegations do not state a § 1983 claim on which relief can be granted.

### CONCLUSION

To summarize, all of Plaintiffs' federal claims against the Federal Defendants are dismissed because sovereign immunity deprives the Court of subject-matter jurisdiction over them—with the exception of Plaintiffs' NEPA claim, which is dismissed for failure to state a claim upon which relief can be granted.  Plaintiffs' federal claims against the State Defendants are dismissed for failure to state a claim upon which relief can be granted to the extent that they fall under the *Ex Parte Young*

exception, and otherwise dismissed because the Eleventh Amendment deprives the Court of subject-matter jurisdiction over them.  Plaintiffs' federal claims against the City Defendants are dismissed for failure to state a claim upon which relief can be granted.  The Court declines to exercise any supplemental jurisdiction that it may exercise over Plaintiffs' state law claims, and therefore dismisses them for lack of subject-matter jurisdiction.  Accordingly,

**IT IS ORDERED** that Defendants' Motions to Dismiss [22, 23, 24] are **GRANTED**.  Plaintiffs' complaint is dismissed in its entirety.

**IT IS FURTHER ORDERED** that all other pending motions [7, 26, 28] are **DENIED**.

**SO ORDERED**.

s/Arthur J. Tarnow
Arthur J. Tarnow
Dated: July 18, 2016                     Senior United States District Judge